UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.                                                                                                No. 5:22-cr-9-BJB

ANDRE M. BRODIE

\* \* \* \* \*

MEMORANDUM OPINION & ORDER

Andre M. Brodie is serving a 36-month sentence for possessing firearms and cocaine base (which he intended to distribute). Citing his medical conditions, Brodie seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Motion for Compassionate Release (DN 52-2). Because the motion doesn't show an extraordinary and compelling basis for release consistent with the sentencing laws enacted by Congress, *see* 18 U.S.C. § 3553(a), the Court denies his motion.

I.

A federal grand jury indicted Brodie in February 2022. Fifteen months later, Brodie pled guilty to possessing firearms as a previously convicted felon and possessing with the intent to distribute a substance containing cocaine base. Plea Agreement (DN 30) ¶¶ 1–3; Presentence Investigation Report (DN 36) ¶¶ 1–12. Brodie faced a mandatory minimum sentence of 5 years in prison and a combined maximum sentence of 50 years in prison. Plea Agreement ¶ 4; PSR ¶ 94. The Sentencing Guidelines range was 84–105 months. PSR ¶ 95. Consistent with the parties' Rule 11(c)(1)(C) plea agreement, the Government recommended a sentence at the lowest end of the applicable guideline range. Plea Agreement ¶ 11. This Court ultimately sentenced Brodie to 36 months in prison. Judgment (DN 45) at 3.

Eight months after receiving his sentence, Brodie filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). That *pro se* request rests on his weight, diabetes, high blood pressure, and concerns about contracting Covid. Motion at 1–3. The Government did not file a response to Brodie's motion.

II.

Before a federal inmate may request compassionate release, he must first ask his facility's warden to do so on his behalf. *United States v. Alam*, 960 F.3d 831, 833

(6th Cir. 2020) (citing § 3582(c)(1)(A)). Only after the warden denies the request—or else does not reply within 30 days of receiving the request—may the inmate seek release on his own behalf. *Id.* Brodie requested a reduction in sentence with the warden of his facility and received a denial on March 11, 2024. *See* Warden Response (DN 52-1). The prison's medical staff determined Brodie does "not meet the criteria under Terminal Medical Condition or Debilitated Medical Condition." *Id.* at 1. Additionally, in response to Brodie's concerns about Covid, the Warden responded that Brodie's Covid concerns were "legitimate" but did "not currently warrant an early release from [his] sentence." *Id.* at 1–2. Given this evidence and the lack of countervailing assertions from the Government (which hasn't responded), Brodie has apparently satisfied § 3582(c)(1)(A)'s exhaustion requirement. *See Alam*, 960 F.3d at 833–34 (compassionate-release exhaustion is a claim-processing rule that may be waived by the government but not by a court).

### III.

Courts evaluating compassionate-release motions apply a "three-step inquiry." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citation omitted). Release is appropriate only if (1) a prisoner "show[s] that 'extraordinary and compelling' reasons warrant the reduction," (2) the court confirms that "any sentence reduction 'is consistent with applicable policy statements issued by the Sentencing Commission,'" and (3) the prisoner shows that the release is justified under the relevant § 3553(a) factors that govern federal sentencing decisions. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (citing § 3582(c)(1)(A)). Those factors include the defendant's "history and characteristics"; the "nature and circumstances of the offense"; and the need to protect the public, deter criminal conduct, promote respect for the law, and avoid unwarranted sentencing disparities. § 3553(a). The motion fails if any of these three prerequisites is lacking. *Elias*, 984 F.3d at 519.

In its recently amended compassionate-release Policy Statement, the Sentencing Commission lists six categories of extraordinary and compelling reasons that may support compassionate release. Those categories are (1) medical circumstances, (2) age, (3) family circumstances, (4) abuse suffered in custody involving a "sexual act" or "serious bodily injury," (5) "other reasons" similar to those in the first four categories, and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b). Such circumstances, according to the Sixth Circuit (speaking before the Policy Statement issued), are "most unusual" and "far from common." *McCall*, 56 F.4th at 1055 (citation omitted). And in any event, district judges retain considerable discretion to determine whether a defendant's reasons are extraordinary and compelling. *See United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A. No Extraordinary and Compelling Reasons Warrant Brodie's Early Release

#### 1. Medical Conditions

A medical circumstance may be extraordinary and compelling if the defendant's condition resembles one of the four situations described by the Sentencing Commission's Policy Statement. Set forth at § 1B1.13(b)(1), these include instances in which the defendant is:

- "suffering from a terminal illness";
- suffering from a "serious physical or medical condition" or a "serious functional or cognitive impairment" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";
- "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or
- housed in and medically threatened by a facility affected by a disease outbreak or public health emergency causing risk that cannot otherwise be timely mitigated.

"Diabetes," "obesity," and "hypertension," courts have held, are typically "neither extraordinary nor compelling." *United States v. Mukherjee*, 614 F. Supp. 3d 560, 567 (E.D. Mich. 2022) (citations omitted). While Brodie's medical conditions appear challenging, they surely aren't "far from common"—millions of Americans suffer from the same ailments as Brodie. *McCall*, 56 F.4th at 1055 (citation omitted). Indeed none of Brodie's conditions match the severity of the situations enumerated in the Policy Statement—at least not as he has described them; he does not claim that his conditions are terminal ("a serious and advanced illness with an end-of-life trajectory") or that they are so severe that they diminish his ability to provide self-care. *See* § 1B1.13(b)(1). The same is true of his "intense breathing problem[s] and continuous strain of knee and feet pain." Motion at 1. These conditions are no doubt unfortunate and unpleasant—but not extraordinary.

Brodie also raises several complaints about his medical care, including concerns about his inability to see his personal physician, access his preferred blood pressure medication, and his diet. *See id.* at 1–2. The most important point, of course, is that he is in fact receiving medical care for his conditions while in custody. *See* § 1B1.13(b)(1)(C). The motion describes the different medicines that professionals have prescribed in hopes of managing Brodie's sugar levels and high blood pressure. *See* Motion at 1, 2. And Brodie acknowledges receiving treatment for his diabetes and hypertension, though he would prefer it come from his personal physician. *See*

*id.* at 1–2 ("I feel that I could receive a more positive result if released to home confinement to be able to visit my own physician that is familiar with my [diabetes]."); *id.* at 2 ("[M]y personal physician seems to have the correct solutions to maintain a stable hypertension issue."). However genuine and logical that preference may be, Brodie's lack of access to his personal doctor (like countless other features of his daily life) is an ordinary and expected function of his incarceration. Similarly, Brodie claims he is unable to diet properly at his current institution. *See id.* at 2. But he does not claim that he is not receiving *any* diabetes-appropriate food; he just implies that better access to better meals is available on the outside. *Id.* at 2. That's almost certainly true. But such preferences, while understandable, fall far short of demonstrating extraordinary and compelling reasons for early release.

Brodie next asserts that his medical conditions place him at an increased risk of harm if he contracted Covid. *See* § 1B1.13(b)(1)(D). But he recognizes that the facility is mitigating Covid's impact by "quarantining" any infected individuals. *See* Motion at 3 (cleaned up); § 1B1.13(b)(1). Moreover, the risk of contracting Covid—at least when the defendant can access the Covid vaccine—generally does not warrant early release. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). When an inmate has access to the vaccine, he "largely faces the same risk from COVID-19 as those who are not incarcerated." *Id.* Even accounting for new variants, the Sixth Circuit has affirmed that Covid in and of itself is not extraordinary and compelling unless an inmate can show his "particular health concerns … prevent him from benefitting from the vaccine, or that he is at any greater risk than a member of the general public." *United States v. Davis*, No. 22-1319, 2022 WL 13638659, at *2 (6th Cir. Sept. 7, 2022). Brodie has not shown that his weight and other comorbidities, *see* Motion at 3, render him "unable to receive or benefit from a vaccine." *Lemons*, 15 F.4th at 751 (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). Thus Covid cannot amount to an extraordinary and compelling reason warranting a sentence reduction.

Nor can Brodie's other health concerns—his weight, diabetes, and high blood pressure—justify compassionate release independent of Covid concerns. He had those conditions before he was sentenced. PSR ¶¶ 72, 73; Motion at 2. And he has not pointed to any change in circumstances that would alter their bearing on his original sentence. "[F]acts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). While Brodie apparently has gained weight, *compare* PSR ¶ 72 *with* Motion at 1, he hasn't shown his medical issues have become terminal, debilitating, or unaddressed. § 1B1.13(b)(1). So even under the new Policy Statement, Brodie's medical situation—and its effect on the Court's consideration of the appropriateness of incarceration—

don't appear to differ materially from the circumstances at the time of sentencing. He has not presented extraordinary and compelling reasons for early release.*

### B. Section 3553(a) Factors

Even if Brodie could establish an extraordinary and compelling justification under § 3582(c), release would be inconsistent with the relevant sentencing factors set forth by Congress. *See* § 3582(c)(1)(A). As noted above, these factors include the "history and characteristics of the defendant;" the "nature and circumstances of the offense;" and the need to promote respect for the law, reflect the seriousness of the offense, provide just punishment, deter criminal conduct, and avoid unwarranted sentencing disparities. § 3553(a).

The rehabilitative efforts Brodie cites, *see* Motion at 3, are no doubt admirable. And his familial support and preparations for post-imprisonment success, *id.* at 3–4, are crucial to his success after release. But the § 3553(a) factors still cut against a sentencing reduction here. Both of Brodie's offenses were serious. According to the PSR, Brodie was in possession of three firearms. PSR ¶ 28. Brodie's self-description as a "non-violent offender," Motion at 3, is arguably true in one sense (unidentified people apparently shot at Brodie from a vehicle) but not another (he returned fire with one of those three guns and "create[ed] a substantial risk of harm" to surrounding witnesses. PSR ¶ 30. Brodie, previously convicted of a felony, discarded that firearm in the woods after he fired it. ¶ 29. Even without the firearm offense, Brodie's "drug trafficking [conviction] is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). That danger cautions against a sentence reduction under § 3553(a). *See United States v. Alford*, No. 5:14-cr-77, 2021 WL 1511643, at *3 (E.D. Ky. Apr. 9, 2021) (denying compassionate release in part because the danger of drug trafficking militated against sentence reduction).

Brodie's 36-month sentence (which could've been much higher given the Guidelines) reflects the seriousness of his offenses and protects the public from any future transgressions. *See, e.g., United States v. Maxwell*, 991 F.3d 685, 693 (6th Cir. 2021) (sentence reflected "severity of [defendant's] criminal conduct" and "likeliness of recidivism"). Further reducing the sentence could also contribute to sentencing disparities, given the below-Guidelines sentence the Court already imposed. *See, e.g., United States v. Haygood*, No. 2:19-cr-144, 2022 WL 1073573, at *3 (E.D. Tenn. Apr. 8, 2022) (compassionate release of a sentence that was below the Guideline range could "create an unwarranted disparity in sentencing").

---

* Because the Court denies Brodie's motion, it need not consider whether granting the motion would be consistent with the applicable Sentencing Commission's policy statements, which present another set of considerations regarding early release. *See McCall*, 56 F.4th at 1054.

5

## **ORDER**

The Court denies Brodie's motion for compassionate release (DN 52).